IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 18, 2020

## CHRISTOPHER S. MAYBERRY v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Humphreys County**
**No. 12911, 2010-CC-12044    Suzanne M. Lockert-Mash, Judge**

———————————————————

### No. M2018-02109-CCA-R3-PC

———————————————————

Following a bench trial, the trial court found the Petitioner, Christopher S. Mayberry, guilty of two counts of the sale of methamphetamine. The trial court sentenced the Petitioner to concurrent sentences of ten years for each count, to run consecutively to a prior sentence. The Petitioner timely filed a post-conviction petition, alleging the ineffective assistance of counsel. After a hearing, the post-conviction court denied relief. On appeal, the Petitioner maintains that his attorney was ineffective and also asserts that the post-conviction court erred by "delaying the [post-conviction] hearing." After review, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Nicole R. Brasfield, Waverly, Tennessee, for the appellant, Christopher S. Mayberry.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Assistant Attorney General; Wendell Ray Crouch, Jr., District Attorney General; and Joshua C. Turnbow, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION
### I. Facts

This case arises from three separate drug transactions conducted by the Waverly Police Department, with the assistance of a confidential informant ("CI"). In June 2010, a Humphreys County grand jury indicted the Petitioner for two counts of sale of methamphetamine, a Class B felony, and one count of sale of cocaine, a Class B felony. This court summarized the facts presented at the December 8, 2011 bench trial as follows:

[The CI] was involved in three separate transactions involving [the Petitioner] in December of 2005. The transactions that are at issue on appeal occurred on December 21 and 23. On these two separate occasions, [the CI] called [the Petitioner]'s cell phone to arrange a meeting. [The CI] was given money from the police for the transactions. The first of the drug purchases took place in West Brookside through a friend named "Shelley." Ms. Tiffany gave the drugs to [the CI] and [the CI] gave Ms. Tiffany the money. The second transaction took place in the same manner. Both transactions resulted in the purchase of methamphetamine.

At trial, [the CI] testified that the second transaction was similar to the first, also taking place at Brookside. [The CI] talked to [the Petitioner] on the phone and gave him directions to her house. Ms. Tiffany came with [the Petitioner] to the house. [The Petitioner] did not enter [the CI]'s residence on either occasion. On the audio recording of the transaction, [the CI] is heard talking to someone on the telephone. She tells the person that she lives in Brookside. [The CI] then talks to an unidentified person about drugs and how much money she has paid for drugs in the past. [The CI] then takes another phone call, explaining specifically how to get to her house. She asks the person how long it will take to get to her house, "like fifteen, twenty minutes?" A few minutes later on the tape, knocking is heard. A female voice appears for a few minutes before [the CI] is heard saying, "Bye ya'll." Multiple voices respond to [the CI]. At that point, [the CI] says that "everybody and their f—— mama's been here." [The CI] asks the female if it is a "gram," complains that it is not a gram, and asks if "Chris" is out in the car and whether he can talk to her at the moment. [The CI] is later heard asking "can't you talk to me?" A female voice responds that they are in a hurry. A few moments pass before a female and male voice are heard conversing with [the CI]. At that point, a car engine starts and fades away.

Later on the audio recording a new phone call begins with [the CI] exclaiming that she "got both of them" but that "Shelley gave it to me" and "he" was in the car and "in a hurry."

On December 23, the audio recording begins with [the CI] receiving instruction from Detective Ahne to buy cocaine from "Ray Ray" Cooksie. During the recording, [the CI] receives a call and asks the caller if they were "coming right now" because she was "fixin to leave in about ten minutes." [The CI] is then heard talking to a female about cornmeal. [The CI] asks where "Chris" is and the female voice responds that he is "out in

the truck." [The CI] claims that she will "drag him out of that truck." Next, [the CI] is heard talking to a male voice. After some small talk, the vehicle is heard driving away.

[The Petitioner] chose not to testify at trial. Rochelle Tiffany testified for [the Petitioner]. She dated [the Petitioner] "off and on for about the last six years" and had a brief relationship with him in 2005. Ms. Tiffany confirmed that she had recently written letters to the trial court with regard to the case in which she claimed [the Petitioner] "had no knowledge of what was stated on them days." In other words, [the Petitioner] "had no knowledge of the actual [drug] buys." She claimed that [the CI] contacted her via telephone, set up the drug buys with her, and that [the CI] never had contact with [the Petitioner]. However, on cross-examination, Ms. Tiffany admitted that she was riding around with [the Petitioner] when she went to [the CI]'s home to deliver the drugs and receive the payment. Ms. Tiffany claimed that she kept the money from these drug transactions and did not give it to [the Petitioner]. Ms. Tiffany informed the trial court that she was charged as a co-defendant but had accepted a "diversion plea." Unfortunately, Ms. Tiffany violated probation and, after her probation was reinstated, failed a drug screen. Ms. Tiffany ultimately ended up serving her three-year sentence.

*State v. Christopher S. Mayberry*, No. M2012-00693-CCA-R3-CD, 2013 WL 941836, at *1-2 (Tenn. Crim. App., at Nashville, Mar. 11, 2013), *perm. app. denied* (Tenn. Aug. 14, 2013). Following the evidence, the trial court granted a motion for judgment of acquittal with respect to the sale of cocaine charge and convicted the Petitioner of two counts of sale of methamphetamine. The trial court sentenced the Petitioner to concurrent sentences of ten years for each count, to be served consecutively to a prior sentence. On appeal, this court affirmed the trial court's judgments. *See Christopher S. Mayberry*, No. M2012-00693-CCA-R3-CD, 2013 WL 941836, at *1.

The Petitioner timely filed a post-conviction petition and, after amendments to the petition, a hearing was scheduled for August 4, 2015. The technical record reflects that the Petitioner filed three motions for continuances, and the post-conviction court granted each motion. After the third motion, the hearing was scheduled for November 1, 2016. On November 1, 2016, the post-conviction court entered an order resetting the hearing for August 25, 2017, due to an injury that prevented the judge from working for a period of time. On the date of the August 2017 hearing, the post-conviction court issued an order resetting the hearing to June 26, 2018, because the Tennessee Department of Correction ("TDOC") could not transport the Petitioner due to medical issues.

On the day of the June 2018 hearing, the post-conviction court issued an order resetting the case for August 27, 2018, due to notification that TDOC "failed to transport Petitioner due to lack of availability of ambulance services." The order indicates that the post-conviction court "admonished" prison officials "that show cause orders would be issued if [the post-conviction court]'s orders were not complied with by the prison." Shortly before the August 2018 hearing, post-conviction counsel filed a motion to withdraw. The post-conviction court granted the motion on the scheduled hearing date, new counsel was appointed, and the hearing was reset for November 6, 2018.

The post-conviction court held the hearing, and the parties presented the following evidence: Counsel testified that he was appointed to represent the Petitioner in 2011 on the three drug charges. Counsel recalled meeting with the Petitioner at the prison on two occasions to discuss his case, and review videos and discovery with him. On one of the two occasions, the attorney representing the Petitioner on another case also participated in a discussion about the best way to proceed with the two cases. Counsel recalled that he discussed the trial process with the Petitioner and explained why he believed a jury trial would be a better choice. Despite Counsel's advice, the Petitioner wanted a bench trial and he did not want the two cases severed.

Counsel testified that he spoke with the CI before trial and then he cross-examined the CI at trial. During cross-examination, he did not attempt to attack her credibility because her testimony was favorable to the Petitioner. Counsel recalled that, at trial, the CI did not identify who she was speaking with on the audio recordings. When asked by the State, the CI would say "I don't remember" or "I don't know who that was." Counsel believed this testimony benefitted the Petitioner. As to the CI's criminal history and drug use, Counsel said that the State elicited this information on direct to explain the CI's role in the case and, therefore, he did not ask about it again on cross-examination.

Counsel testified that he did not file a motion to suppress the audio recordings of the transactions because it would have been "a frivolous motion." Counsel said that he discussed "all factual and legal aspects of the case" with the Petitioner, as well as trial strategy. He stated that before the trial, he explained to the Petitioner the procedure for a bench trial.

On cross-examination, Counsel identified the time records he had submitted to the Administrative Office of the Courts for payment of services. The records reflected that he met with the Petitioner on three occasions, called him once, and spent eight hours preparing for trial. He confirmed that he and the Petitioner listened to the audio recordings together at the prison. As to the Petitioner's allegation that Officer Ahne had threatened the CI, Counsel stated that he was unaware of any threats made by the police in this case. He stated that the testimony at trial was that the CI was paid to act as an

informant for the police and that the CI had participated in more than fifty controlled buys.

As to the Petitioner's allegations that Counsel did not discuss possible defenses or the trial process with him, Counsel identified a letter that he provided to the Petitioner, and that the Petitioner signed, indicating that he had discussed trial strategy with the Petitioner and the Petitioner had signed the letter. About the CI's testimony at trial, Counsel testified that the CI stated that the Petitioner "never handed her drugs or accepted money from her for the drug buys." The CI also stated that the Petitioner never entered the house where the drug buy occurred and that the CI received the drugs from the co-defendant. Based upon this testimony, Counsel did not attempt to discredit her testimony.

Counsel reiterated that he believed a motion to suppress the audio recordings would have been frivolous and that he found no legal basis to file a motion to suppress. Counsel confirmed that the Petitioner was charged with three counts, and one of the counts was dismissed upon motion for judgment of acquittal.

The Petitioner testified that he met with Counsel prior to trial, one time for one hour. Upon further questioning, he added that he met with Counsel and another attorney about the possibility of not filing a motion to change venue. He described that meeting as "quick," "probably a good 15 minutes." The Petitioner denied that Counsel ever played the audio recordings for him or that he spoke with Counsel by phone. The Petitioner recalled that Counsel spoke with him about a severance motion but "because [Counsel] didn't tell [him] nothing about what the motion to severance was [,] . . . I just said I didn't want it."

The Petitioner testified that Counsel never discussed trial strategy with him. He said that he wanted Counsel to file a motion to suppress because the Petitioner's voice was not on the audio recordings of the controlled buy. The Petitioner stated that he told Counsel that he believed that Officer Ahne had threatened the CI with prosecution if she did not testify against the Petitioner. The Petitioner recalled that he told Counsel that Counsel "could subpoena [the Petitioner's] mother" and that the Petitioner "had a couple more [witnesses]."

On cross-examination, the Petitioner agreed that he had heard the audio recordings of the controlled buy but that a "different lawyer" had played the recordings for him, not Counsel. When asked what his mother would have testified to at trial, the Petitioner said that she would have testified that his voice was not on the audio recordings.

In a subsequent order, the post-conviction court concluded that the Petitioner had failed to show that Counsel's representation was deficient and had failed to prove that he had been prejudiced by Counsel's representation. It is from the post-conviction court's judgment that the Petitioner now appeals.

## II. Analysis

The Petitioner contends on appeal that the post-conviction court erred when it denied his petition because he received the ineffective assistance of counsel at trial and that the trial court erred when it delayed his hearing. The State responds that the post-conviction court properly denied the Petitioner relief on his claims of ineffective assistance of counsel and that he has waived his issue regarding the delay in the hearing because he failed to present it to the post-conviction court. We agree with the State.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2018). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2018). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997)). A post-conviction court's factual findings are subject to a *de novo* review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely *de novo* review by this Court, with no presumption of correctness. *Id.* at 457.

## A. Ineffective Assistance of Counsel

The Petitioner asserts that Counsel: (1) was deficient in his trial preparation and in advising the Petitioner about the case; (2) did not adequately cross-examine the CI; and (3) failed to file a motion to suppress the audio recordings. The State responds that the post-conviction court properly denied relief. We agree with the State.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6

S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 689-90. In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980).

"'The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" *House*, 44 S.W.3d at 515 (quoting *Goad*, 938 S.W.2d at 369).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the Strickland test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

In a written order denying relief, the post-conviction court summarized the testimony from the hearing as follows:

> [Counsel] stated that he met with Petitioner twice at Deberry Prison. He and attorney Mark Odle met with Petitioner the first time and Petitioner was allowed to see and hear the videos and audios. He stated that Petitioner identified the confidential informant when he heard the audio tape. Additionally, [Counsel] testified that he reviewed the discovery with Petitioner but, due to prison rules, could not leave anything with him. [Counsel] returned alone for his second meeting with Petitioner.

> He testified that they discussed the strengths and weaknesses of the case. He suggested to Petitioner to allow the case that Mark Odle was handling to be tried first because it was weaker but Petitioner refused to follow this suggestion. [Counsel] testified that he discussed the trial process and felt that the Petitioner would have a better chance of acquittal with a jury but Petitioner again declined to follow his advice.

> On November 22, 2011 Petitioner signed a document prepared by [Counsel] which outlined their discussions about trial preparation and defense. (See Exhibit 42, PCR Hearing). As to the cross-examination of the confidential informant, [ ], [Counsel] testified that her testimony was weak and he felt that she was actually helping the [Petitioner]. He had interviewed her prior to trial. He said he had no knowledge of [the CI] being threatened. He testified that he didn't file a Motion to Suppress because he thought it would be a frivolous motion. A claim for attorney fees indicating the amount of time spent on the case was submitted into evidence (See Exhibit #1, PCR Hearing).

Petitioner testified that he only talked with his attorney twice for a total of one hour and fifteen minutes. He said he heard the audio recordings with attorney Mark Odle but not with [Counsel]. He admitted to talking to [Counsel] about a severance and he admitted to signing Exhibit #2. which laid out in letter form what [Counsel] and Petitioner discussed on November 22, 2011. He stated that his attorney did not subpoena his mother or other witnesses (whom he could not name) but could not say how their testimony would be relevant or helpful. The Court did not find Petitioner to be credible.

The post-conviction court then concluded:

It is quite obvious that [Counsel] met with Petitioner on two occasions prior to trial and discussed discovery, trial procedure and strategy. Petitioner's assertions that this did not happen are just not believable. The Court finds that Mr. Hooper is a competent attorney who adequately prepared for this trial despite having a client who refused to follow his advice regarding severances and trial scheduling. His competence was certainly on par if not above the -range of competence demanded of attorneys in criminal cases." *Baxter v. Rose,* 523 S.W.2d 930 (Tenn. 1975). The Court is of the opinion that Petitioner has failed to carry his burden of proof as to both "deficient performance" and "prejudice".

The post-conviction court accredited Counsel's testimony and found that Counsel had provided effective representation. The record does not preponderate against the post-conviction court's findings of fact. The record shows that Counsel spent time with the Petitioner and that Counsel adequately discussed trial strategy with the Petitioner. Counsel's time sheet corroborates his testimony that he spent a sufficient amount of time to prepare for trial. The Petitioner failed to provide any evidence which indicates that Counsel was unprepared for trial. Counsel testified that he met with the CI before trial and explained that his decision not to attack her credibility during cross-examination was because her testimony benefitted the Petitioner. The post-conviction court accredited Counsel's testimony, and this Court will not re-weigh the credibility findings of the post-conviction court. *See Momon*, 18 S.W.3d at 156; *Henley*, 960 S.W.2d at 578-79.

As to Petitioner's contention that Counsel should have filed a motion to suppress, Counsel testified that there was no legal basis upon which to assert the audio recordings should be suppressed. The decision not to file a motion to suppress the Petitioner's statement appears to have been a strategic choice predicated upon adequate investigation. *See Goad v. State*, 938 S.W.2d 263, 269 (Tenn. 1996). Nothing requires counsel to file

what he believes to be a frivolous motion to suppress. Moreover, a petitioner must present evidence at his post-conviction hearing to prove his trial counsel was ineffective for failing to file pre-trial motions to suppress evidence. *Cecil v. State*, No. M2009-00671-CCA-R3-PC, 2011 WL 4012436, *8 (Tenn. Crim. App., at Nashville, Sept. 12, 2011), *no perm. app. filed*. In order to show prejudice, a petitioner must show by clear and convincing evidence that (1) a motion to suppress would have been granted and (2) there was a reasonable probability that the proceedings would have concluded differently if counsel had performed as suggested. *Id.* Other than the Petitioner's assertion that Counsel should have filed a motion to suppress and Counsel's explanation as to why he did not, the substance of a suppression motion was not presented at the post-conviction hearing. Thus, the Petitioner has failed to meet his burden of showing that Counsel was deficient and that the Petitioner was prejudiced by Counsel's decision not to file a motion to suppress.

Accordingly, we conclude that the Petitioner has not demonstrated that Counsel performed below the range of competence demanded of an attorney in a criminal case or that he was prejudiced by that performance. The Petitioner is not entitled to relief.

### B. Delayed Hearing

The Petitioner asserts that the post-conviction court erred in delaying his hearing for four years. The Petitioner filed his amended petition on November 24, 2015. The post-conviction hearing was held on November 6, 2018. The Petitioner contends that this extended period of time prejudiced him because he had already served most of the minimum amount of time required on his sentence and was close to parole eligibility by the time of the post-conviction hearing. The State responds that the Petitioner has waived review of this issue for failure to raise it before the post-conviction court. We agree with the State.

Tennessee Code Annotated section 40-30-106(g) provides that "A ground for [post-conviction] relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented[.]" In short, "issues not presented in a post-conviction petition and raised for the first time on appeal are waived." *Johnny O. Clark v. State*, No. W2001-02856-CCA-R3-PC, 2002 WL 1841630, at *7 (Tenn. Crim. App., at Jackson, Aug. 8, 2002), *perm. app. denied* (Tenn. Dec. 23, 2002). Accordingly, the Petitioner is not entitled to relief.

## III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the post-conviction court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE